LIVONIA TOWNSHIP SCHOOL DISTRICT *v.* WILSON.

1. DEEDS—ACCEPTANCE OF ENTIRE INSTRUMENT.
   One who claims under a deed confirms all of its provisions and cannot establish his claim by adopting those provisions which are in his favor while repudiating or contradicting others that are repugnant thereto.

2. SCHOOLS AND SCHOOL DISTRICTS—DEEDS—REVERSION—OPTION TO PURCHASE—ACCEPTANCE—ESTOPPEL.
   A school district which accepted a deed with a reversionary clause or option to purchase on condition subsequent is estopped from claiming it had no right to accept such a deed (CL 1948, § 366.1).

3. EMINENT DOMAIN—PUBLIC USE.
   The right to condemn lands for public purposes is a vital right of every government.

4. SAME—NATURE OF A PUBLIC USE.
   The public use of property implies a possession, occupation, and enjoyment of land by the public at large, or by public agencies and a due protection to the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another, on vague grounds of public benefit, to spring from the more profitable use to which the latter may devote it.

5. SAME—LIMIT OF PROPERTY TO BE TAKEN—NECESSITY.
   The legislature cannot authorize the taking of property in excess of that required for public use.

6. SAME—CONDEMNATION PROCEEDINGS—NECESSITY.
   No more property of a private individual and no greater interest therein can be taken in condemnation proceedings than is absolutely necessary.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Deeds § 362; 19 Am Jur, Estoppel § 21.
[2] 19 Am Jur, Estoppel §§ 7, 22.
[3] 18 Am Jur, Eminent Domain § 7.
[4] 18 Am Jur. Eminent Domain § 37.
[5–7] 18 Am Jur, Eminent Domain §§ 109, 110.

7. Same—School Districts—Necessity—Option to Repurchase—
Reverter on Condition Subsequent.

> A school district presently in possession of parcels of property
> under deeds containing an option to repurchase in the event
> the district ceases to maintain a school on the premises
> and a possibility of reverter on condition subsequent upon
> cessation of use for school purposes has all of the interest
> necessary to control the property for school purposes and
> there is no necessity for instituting condemnation proceedings
> for that which it already has; hence, there is a failure to es-
> tablish necessity.

Appeal from Wayne; Maher (Thomas F.), J. Submitted April 13, 1954. (Docket No. 59, Calendar No. 46,066.) Decided June 7, 1954.

Petition by Livonia Township School District against Frank N. Wilson and Julia Ann Wilson, John Holts and Sophia Holts, and their unknown heirs, devisees and assigns, for condemnation of an interest in lands for school purposes. Judgment for defendants. Plaintiff appeals. Affirmed.

*Carl J. Thrun* and *Benjamin S. Pagel,* for plaintiff.

*Orville H. Foster, Jr.,* and *Richard G. Eubank* (*Markle, Markle & Eubank,* of counsel), for defendants.

Sharpe, J. Livonia township school district of Wayne county, Michigan, filed a petition in the circuit court of Wayne county for the acquisition of private property by condemnation proceedings. The property involved consists of 2 parcels of land now in use for school purposes. In 1869, parcel No. 1 was conveyed by warranty deed to school district No. 6 of Livonia township by John Holts and wife. The deed contained the following:

"If the above school district ceases to use the same for school purposes or desires to sell the same, they, the school district, are to give the said John Holts the privilege of purchasing the same for the sum consideration of this deed to-wit $80."

One of the named defendants, Frank N. Wilson, was the grandson and only heir of John Holts and Sophia Holts, his wife. Mr. Wilson's widow, Julia Ann Wilson, and daughter surviving him, entered their appearance and defended the proceedings.

On May 24, 1944, Frank N. Wilson and Julia Ann Wilson executed a quitclaim deed conveying the above property to the school district. This deed contained the following:

"In the event the grantee or any successor in title to said grantee shall in any year during the period of 25 years from the date hereof cease to maintain and operate thereon a public school and to use said premises for public school purposes, then and in that event the said grantee and its successors in title do hereby give an option to the grantor, Frank N. Wilson, named in this quitclaim deed, to repurchase the above-described property for the consideration of $80.

"It is the purpose of this quitclaim deed to cancel ,and discharge the repurchase provision as contained in the deed dated March 9, 1869, above shown, and to substitute in the place and stead thereof the option privilege as stated herein, and it is the further intent hereof that if said premises are used as provided in said deed, to which reference is herein made, for a period of 25 years from the date hereof, then and thereafter any option or privilege or [of *sic*?] repurchasing shall terminate forever."

A schoolhouse was built and has been maintained upon the above premises since the school district has had title to the property.

Parcel No. 2 was conveyed by warranty deed by Frank N. Wilson and Julia Ann Wilson on May 24, 1944, to the school district. This deed provides:

"This deed is given subject to the following reversionary provision; In the event the grantee or any successor in title to said grantee, shall in any year during the period of 25 years from the date hereof cease to maintain and operate thereon a public school and to use said premises for public school purposes, the title to said premises shall revert to and vest absolutely in the grantor, Frank N. Wilson, his heirs and assigns forever."

It also appears that a brick schoolhouse and a frame school building are located on the parcels of land. Both school buildings are presently being used as schools.

The resolution adopted by plaintiff school district authorizing the commencement of the condemnation proceedings contains the following:

"Whereas, the above-described property has been used for school purposes, and as a school site, and large sums of money have been expended in the erection of buildings and the establishment of play grounds thereon.

"Now therefore, be it resolved, that the board of education of Livonia township school district does hereby declare and determine that it is necessary to acquire the above-described property in fee simple for public improvement and purpose, to-wit, a school site, for the establishment of school buildings and playground facilities in connection therewith within the school district, and the purpose of its incorporation for public purposes within the scope of its powers and that such improvement is for the use and benefit of the public, and that said property be acquired by condemnation."

Defendants filed an answer which contains the following:

"Further answering said petition respondents allege that the school buildings on said premises have been condemned by the fire marshal as unfit for use for school purposes and that the township board has filed a statement with the said fire marshal alleging that they are about to abandon said premises for school purposes, that because of the Livonia race track near said school there has been great public pressure in the township that said premises be abandoned for school purposes.

"That plans have been drawn, bids accepted, and contracts let for the erection of another school building upon different premises to replace the school building upon the premises in question."

Defendants also filed a motion to dismiss the petition for the following reasons:

"Said petition shows affirmatively that title to all parcels concerned is in the petitioner in fee simple.

"That said petition affirmatively shows that parcel No. 1 has been used for school purposes since March 9, 1869, and that parcel No. 2 has been used for school purposes since May 24, 1944, and that school buildings have been erected thereon and that playgrounds have been established thereon, therefore there is no necessity.

"That said petition shows affirmatively that said right of reverter can be effective only if said school board ceases to use said property for public school purposes, whereby the right of reverter cannot be necessary to the school board, as a matter of law.

"That it is impossible, as a matter of law, for a school board to use a right of reverter for school purposes or for the purpose of erecting school buildings or for the purpose of maintaining playgrounds."

A hearing was had on the above motion, and on November 12, 1953, the trial court entered an order dismissing plaintiff's petition for condemnation. Upon leave being granted plaintiffs appeal in the nature of a mandamus to compel the circuit court to

set aside the order of dismissal and to enter an order to empanel a jury and proceed with the condemnation proceedings.

Plaintiffs urge that part 2, chapter 16, § 1 of PA 1927, No 319 (CL 1948, § 366.1 [Stat Ann § 15.552]), requires that title to lands taken for school purposes shall be perfect and unencumbered in fee simple. In the case at bar the school district has held title to parcel No. 1 since 1869, and to parcel No. 2 since 1944, subject to right of reverter on condition subsequent and option to purchase. In *Porter* v. *Landis,* 329 Mich 76, 83, we quoted with approval the following from *Jacobs* v. *Miller,* 50 Mich 119:

" 'One who claims under a deed confirms all its provisions and cannot establish his claim by adopting those provisions, only, which are in his favor, while he repudiates or contradicts others that are repugnant thereto.' "

See, also, *Young* v. *Young,* 200 Mich 236.

Under the above decisions plaintiffs are now estopped from claiming that it had no right to accept deeds with a reversionary clause or option to purchase on condition subsequent.

The principal question in this case is the right of plaintiffs to institute condemnation proceedings for the sole purpose of obtaining a right of reverter and a power of determination. The issue we are confronted with is one of first impression in this State. The right to condemn lands for public purposes is a vital right of every government. In *Board of Health* v. *Van Hoesen,* 87 Mich 533 (14 LRA 114), we had occasion to discuss the uses for which land can be appropriated. We there (p 538) quoted with approval from Cooley, Constitutional Limitations (6th ed), p 654:

" 'The public use implies a possession, occupation, and enjoyment of the land by the public at large, or

by public agencies; and a due protection to the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another, on vague grounds of public benefit, to spring from the more profitable use to which the latter may devote it.' "

It is a general principle that the legislature cannot authorize the taking of property in excess of that required for public use. See *Jennings* v. *State Highway Commission,* 183 NC 68 (110 SE 583). In *Wilton* v. *St. Johns County,* 98 Fla 26, 49 (123 So 527, 65 ALR 488), the Court quoted with approval from 2 Lewis on Eminent Domain (3d ed), p 1060, § 600:

"Lewis (section 600) says that, though the statute be silent on the subject of necessity, the Constitution impliedly forbids the taking for public use of what is not necessary for such use, and that 'the power to take is, in every case, limited to such and so much property as is necessary for the public use in question, and that the owner is entitled, either in the proceedings to condemn or otherwise, to be heard upon this question.' A long list of cases is cited in the footnotes to sustain this proposition. See, also, 10 RCL 184, 185, and note to *Hayford* v. *Bangor* [102 Me 340, 66 A 731] 11 LRA NS 943 *et seq.*"

In *Curtis* v. *City of Boston,* 247 Mass 417 (142 NE 95) it was said:

"And as private property cannot be taken except for a public use, no more property is to be condemned than the public use requires. *Simonds* v. *Walker,* 100 Mass 112, 113; *Lowell* v. *Boston,* 111 Mass 454, 463 (15 Am Rep 39); *Doon* v. *Natick,* 171 Mass 228, 230 (50 NE 616)."

In *Young* v. *City of Gurdon,* 169 Ark 399 (275 SW 890) it was said (p 409):

"It is a sound principle to apply under the doctrine of eminent domain that no more property of a private

individual, and no greater interest therein, can be condemned and set apart for public use than is absolutely necessary. Cooley on Constitutional Limitations (7th ed), p 779; Mills on Eminent Domain, p 110, § 23."

In the case at bar the school district is the owner of and in possession of both pieces of property. The only right the defendants have in parcel No. 1 is a power of termination or option to purchase in the event that the district ceases to maintain a school on the premises prior to May 24, 1969. The only right or interest the defendants have in parcel No. 2 is a possibility of reverter on condition subsequent, *i.e.* if the school district ceases to use the parcel of land for school purposes prior to May 24, 1969.

The title in the premises now owned by the school district gives the school district complete control of the property for school purposes. The interest that defendants have in the property does not detract in any way from the use of the property for school purposes. We note that the resolution adopted by the school board, which forms the basis of these proceedings, declares its purpose "for the establishment of school buildings and playground facilities in connection therewith." It clearly appears that the purpose stated in the resolution is already within the power of the school district and that there is no necessity to institute condemnation proceedings to acquire that which it already has. In all condemnation proceedings there must be a finding of necessity for the proposed improvement. Failure to establish necessity is fatal to the proceeding. The order of the trial court is affirmed, with costs to defendants.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.